Bobbie Ann HUNTER, Appellant,

v.

Shaun T. CONWELL, Appellee.

No. S–13915.

Supreme Court of Alaska.

April 13, 2012.

Bobbie A. Hunter, pro se, Fairbanks, for Appellant Bobbie Ann Hunter.

Margaret O'Toole Rogers, Foster & Rogers, LLC, Fairbanks, for Appellee Shaun T. Conwell.

Before: CARPENETI, Chief Justice, FABE, WINFREE, and STOWERS, Justices.

1. We use initials to identify the children.

2. *Hunter v. Conwell*, 219 P.3d 191, 198 (Alaska 2009) (*Hunter I*).

## OPINION

STOWERS, Justice.

## I. INTRODUCTION

Bobbie Ann Hunter and Shaun T. Conwell had two sons before separating, S.C. and A.C.[1] Conwell filed a complaint for custody in 2006 but Hunter did not respond. The superior court granted Conwell sole legal and primary physical custody of the boys in a 2006 default judgment. Nearly two years later Hunter, acting pro se, sought modification of custody. The superior court denied Hunter's motion without a hearing because it concluded that Hunter's allegations were insufficient to constitute a substantial change in circumstances. Hunter appealed, and in a 2009 opinion we rejected as time-barred her arguments regarding the initial custody determination, but reversed the superior court's denial of her motion for modification. We remanded for an evidentiary hearing on Hunter's allegations of (1) potential verbal abuse of the boys, (2) a change in Conwell's employment requiring significant time away from the boys, (3) signs that the boys were developing mental health problems, and (4) Conwell's interference with court-ordered telephonic visitation.[2]

An evidentiary hearing on remand was held and the superior court found that Hunter had not demonstrated a substantial change in circumstances warranting modification of custody. The court noted, however, that Conwell's continued interference with telephonic visitation would alone amount to a substantial change if not remedied going forward. Hunter moved for reconsideration; her motion was deemed denied after 30 days. Hunter appeals. We affirm the superior court's finding of no substantial change in circumstances.

## II. FACTS AND PROCEEDINGS

### A. Proceedings Prior To Remand

Bobbie Ann Hunter and Shaun T. Conwell have two young sons, S.C. and A.C. The couple never married but lived together for approximately six years.[3] Their relationship

3. *Id.* at 192.

ended in early 2006 and the parties began living in different communities: Conwell in Kotzebue and Hunter in Fairbanks.[4] Conwell has been in a "committed relationship" with his current girlfriend, Kristen Walker, since 2005, and she lives with Conwell in Kotzebue.

In June 2006, Conwell filed a complaint for sole legal custody and primary physical custody of the boys. Hunter filed no answer, so Conwell moved for default judgment. Hunter did not appear at the August 24, 2006 default custody hearing, at which time the superior court awarded legal and physical custody to Conwell, with summer visitation to Hunter.

Nearly two years passed, during which time Hunter exercised her 2007 and 2008 summer visitation periods. On July 3, 2008 Hunter, acting pro se, filed a motion to modify custody. Hunter argued that modification was appropriate because it "is in the best interest of the children, and a substantial change in circumstances has occurred." Hunter alleged that: (1) while talking on the telephone with S.C., she heard Walker "screaming" and "shouting" at A.C. in the background and was sufficiently "concerned for her children's safety" to call Kotzebue police and request that they "conduct a welfare check"; (2) Conwell often did not answer the telephone when Hunter called, changed his number twice, and was "attempting to alienate [the] children against their mother"; (3) S.C. asked Hunter whether Walker was his mother; (4) Conwell's job caused him to "live away from the children for several weeks at a time"; and (5) Hunter believed Conwell was "neglecting proper parental guidance." Hunter requested sole legal and primary physical custody.

On July 28, 2008, Conwell filed his opposition to Hunter's motion to modify custody. Conwell argued that "many of [Hunter's] statements are not accurate, and even if they were, the allegations do not amount to a significant change in circumstances" since the default custody order was entered.

On September 3, 2008, Superior Court Judge Richard Erlich denied Hunter's motion to modify custody without a hearing. The court noted that custody modification is a two-step process: "[f]irst, AS § 25.20.110[ ] requires the parent seeking the modification [to] show that a substantial change in circumstances has occurred," and if this burden is met, "the court will proceed to examine whether modification is in the best interests of the child." The court construed Hunter's arguments as "a) the alienation of the child's affection," which implicated AS 25.24.150(c)(6), and "b) a failure to meet the child's needs," which implicated AS 25.24.150(c)(1) and (2). The court found no substantial change in circumstances and therefore declined to modify the custody order. The court did, however, impose a regular telephone visitation schedule with calls to be made between 7:30 and 8:00 p.m. on Tuesdays, Thursdays, and Sundays "unless the parties come to some other written mutual agreement," and stated that "[b]oth parties shall ensure that this contact is made."

Hunter filed a motion for reconsideration on September 16, 2008, presenting new evidence of Conwell's alleged failure to comply with telephonic visitation, as well as two telephone log printouts showing 22 calls Hunter alleged she made to Conwell prior to the default hearing. Hunter requested that a custody investigator be appointed, and separately filed a motion requesting enforcement of the telephonic visitation order.

Conwell opposed Hunter's motion to enforce telephonic visitation, explaining that he was making an effort to spend time outdoors with the boys in the fall months so they were sometimes unavailable when Hunter called. Conwell requested that the court modify the times for calls from between 7:30 and 8:00 p.m. to between 7:00 and 7:30 p.m.

On October 16, 2008, the superior court denied Hunter's motion for reconsideration, again finding no substantial change in circumstances, and it denied Hunter's request for a child custody investigation. The court separately ordered the parties to abide by its telephone visitation schedule and declined to adjust the time for court-ordered visitation, which remained between 7:30 and 8:00 p.m. on Tuesdays, Thursdays, and Sundays.

4.  *Id.*

Hunter appealed the denial of her motion to modify custody. We "reject[ed] her arguments regarding the initial custody determination as time-barred," but "reverse[d] the superior court's denial of her motion for modification, and remand[ed] for a hearing on that issue."[5]

In doing so, we examined "whether Hunter alleged facts that, if true, demonstrate[d] that a change in circumstances ha[d] occurred,"[6] and concluded that she had done so:

If established at an evidentiary hearing, the allegation of verbal abuse, the allegation that the boys may still be left in the care of Conwell's girlfriend, and the allegation that the boys have exhibited significant anger and behavioral issues after returning from Conwell's home, could warrant modification of custody. Therefore, Hunter is entitled to a hearing on her motion.[7]

We also noted "other allegations that could justify modification of custody or visitation if proven at an evidentiary hearing," including (1) "that work-related travel requires Conwell to leave the children in the care of third-party custodians several weeks each year," and (2) "that Conwell failed to foster [Hunter's] relationship with the boys," including interfering with telephonic visitation, which we characterized as "extremely serious."[8]

We remanded the case to the superior court for an evidentiary hearing on these issues.

### B. Proceedings On Remand

An initial evidentiary hearing took place on March 24, 2010 in Kotzebue before Superior Court Judge Ethan L. Windahl, who was sitting pro tem. Hunter's witness was unavailable, so the court rescheduled the hearing for April 1, 2010.

At the April hearing, after Hunter's witness testified that both Hunter and Conwell were good parents, Hunter then testified on her own behalf by reading from a prepared statement. She stated that while she was more than willing to work with Conwell, "he does not appear to have any desire to work with me." Regarding Walker's alleged verbal abuse of the boys, Hunter described the original incident that prompted the welfare check, but conceded that she "[didn't] know if the verbal abuse is still going on."

Hunter also testified that she "continue[s] to have problems with the telephone visitation," and then spent several minutes reading from a log of dates and times when she called Conwell's house but was unable to visit satisfactorily with the boys. Hunter testified that there was a three-week period between March 3 and March 21, 2010 when Conwell took the children on vacation to Hawaii and Hunter had no contact information and was unable to reach the boys. Hunter also testified that generally when she does reach the boys they are distracted by television or video games. She also stated "[t]he supreme court was extremely strong about letting [Conwell] know that [it was] concerned with the contact, with me having contact with the kids, and I believe that the denial of contact causes the children to be alienated." Hunter testified that telephonic visits "either ... don't happen, or when I do get them ... my kids are always watching TV or playing video games and it distracts them," a situation Hunter believed was "intentional to alienate them from me or break our mother and child bond."

Regarding who watches the boys while Conwell is out of town, Hunter testified that she "was never told actually who watches them when he is out of town, I just asked that, why can't it be me?" When asked whether she had "any idea about" Conwell's "work schedule or where he is," Hunter replied, "I actually do not."

Hunter testified that in the summer of 2009 she saved up "all her money" to take the boys on a trip to Anchorage and had planned various activities to do with them, but Conwell's sister asked to take the boys to a film, and Hunter "let them go." Hunter also testified that during her summer custody of the boys, Conwell's mother often "show[ed] up unannounced" and asked the boys to go with her; Hunter agreed to let

5. *Id.*

6. *Id.* at 196.

7. *Id.* at 197 (footnote omitted).

8. *Id.*

them go and "[doesn't] mind letting [Conwell's mother] take [the boys], but frequently it's hard to get them back."

Finally Hunter testified that she has to pay for all tickets for the boys' travel, although she is "pretty sure" that Conwell should pay for some of the tickets: "Like, the holidays [in 2009–2010], I had to buy all the tickets, and if I didn't [Conwell] told me that he wasn't going to send me the kids.... I just feel like he's trying to keep them away from me." [9]

On cross-examination by Conwell's attorney, Hunter conceded that she has had all of her physical visitation with the boys, though Hunter again noted that she had paid for the boys' travel herself, and she also emphasized that telephonic visitation has not been consistent. But Hunter admitted that she "didn't keep track of the days" that she did speak to the boys, only those days on which she encountered problems.

Hunter also conceded that she had no knowledge that anyone was abusing the boys "because I'm not there," and confirmed that she willingly let the boys go with Conwell's family members on the various occasions she had described when this occurred. Hunter also acknowledged that the boys exhibit "difficult behaviors" when they visit her, "[i]n the first few days, like the transition time"; Hunter acknowledged it was possible that the boys' acting out could be a result of the transition between households.

Conwell testified on his own behalf, and called no other witnesses. He stated that he has been employed by OTZ Telephone for three to four years, and that although the "vast majority of [his] work is taken care of in Kotzebue," "every once in a great while" he is "called out for a day trip" which tends to be within 90 miles of Kotzebue. Conwell testified that since this job started he has been out of town for no more than three days at a time, that his employer knows he has children, and that he has kept records of his occasional day trips to the villages. Conwell explained that his normal work schedule is 8 to 5 Monday through Friday, he is on call at other times but has not been called once

since he started work, and he is usually home for dinner with the boys, who have a "very structured time schedule." Conwell testified that on the rare occasions he is out of town, his girlfriend Walker cares for the boys: Walker lives in his home and has been in a relationship with Conwell since 2005, and the boys are familiar with her. He stated that there is "no confrontation" between Walker and the boys, and that there is no truth to the allegation that Walker verbally abuses them.

With regard to telephonic visitation, Conwell testified that Hunter does have her telephonic visitation with the boys, that "on top of the scheduled days I do get called every day," and "when it is the day [Hunter] calls, Tuesday[s] Thursday[s] and Sunday[s], when she calls those days ... and [the boys] do not speak with her, I do call her back." Conwell stated that he did not call Hunter while he and the boys were in Hawaii because his cellular phone SIM card did not function there, and because he did not want to use the telephone at the condominium in which they were staying because he tries to "shy away from phones when [he is] working in the telephone community." He also conceded that when Hunter calls outside of her court-ordered time, he does not "have a tendency of calling back."

Finally, Conwell testified that the boys have a structured life and are doing well at school and that their best interests are served by being in his custody.

On cross-examination by Hunter, Conwell denied having stated that he noticed that Walker "mistreated" the boys, but admitted that he did not use a calling card to call Hunter while on vacation with the boys in Hawaii. When asked by Hunter why he did not "turn the TV off during [her] visitation," Conwell replied that "only one child can talk at a time," and if one boy is on the phone the other should not be "punish[ed]" if he's "really into that show."

The superior court, ruling on the record, stated that it was satisfied that the issues on remand had been answered, and found spe-

---

**9.** Although it appears Hunter has had the boys over Christmas holidays, this arrangement seem-

ingly was not provided for by the custody order.

cifically that (1) "[t]he verbal abuse allegation ... is not substantiated for anything that's going on these days," (2) "the children are being cared for adequately and properly whether Mr. Conwell is there or whether his girlfriend is there," (3) no "significant anger management and behavioral issues" affect the boys, "other than perhaps during a transitional period," and that (4) "Mr. Conwell's testimony is pretty clear that he does not travel out of town for significant periods of time." The court concluded that these issues "do not create a significant change in circumstances."

The court stated that it was "concerned" about the telephone contact, and that "that's the only thing really that seems to me to have some substance." The court elaborated:

> I don't think that the telephone contact issue creates a change in circumstances, but I do believe that Ms. Hunter has a legitimate concern about contact with the boys. And I am of the opinion that if there is a scheduled time, and it is, there is, in the custody order as I recall, it seems to me that maybe the television needs to get turned off, and when mother calls, then you deal with it, and I don't care if that's inconvenient or if it upsets one of the kids or not. This is a significant issue, you [Conwell] have the kids more than nine months of the year, mother's entitled to talk to them when it's time to talk to them. Now clearly if she doesn't call at the appointed times, then it's her problem. But if she does, then she's entitled to have the kids talk to her.

Hunter requested written findings and the court issued its supplemental written order on April 5, 2010. In it, the superior court stated that although Conwell's "less than sat-

isfactory performance ... when it comes to telephonic visitation" did not amount to a change in circumstances warranting custody modification, "if over the course of the next year Ms. Hunter feels that the situation has not improved," "[t]hat issue alone, if established by reliable evidence, will constitute a substantial change of circumstances sufficient to appoint a child custody investigator and revisit the issues of custody and the best interests of the children under AS 25.24.150."

Hunter filed a motion for reconsideration on April 12, 2010, which was deemed denied after 30 days pursuant to Alaska Civil Rule 77(k)(3). Hunter appeals.

## III. STANDARD OF REVIEW

The superior court "has broad discretion in deciding child custody issues." [10] We will "review a trial court's child custody decision for abuse of discretion and review underlying factual findings for clear error." [11] A trial court's decision whether there has been a prima facie showing of a substantial change in circumstances sufficient to trigger an evidentiary hearing regarding custody modification is reviewed for abuse of discretion.[12] Abuse of discretion occurs when the superior court "considers improper factors or improperly weighs factors in its decisional process." [13] Clear error exists when, after a review of the entire record, we are "left with a definite and firm conviction" that a mistake occurred.[14] We grant "particular deference to the trial court's factual findings when they are based primarily on oral testimony, because the trial court, not this court, performs the function of judging the credibility of witnesses and weighing conflicting evidence." [15]

**10.** *Wee v. Eggener,* 225 P.3d 1120, 1124 (Alaska 2010) (citing *Millette v. Millette,* 177 P.3d 258, 261 (Alaska 2008)).

**11.** *Id.* (citing *Jaymot v. Skillings–Donat,* 216 P.3d 534, 538 (Alaska 2009)); *see also Odom v. Odom,* 141 P.3d 324, 330 (Alaska 2006) (quoting *Hamilton v. Hamilton,* 42 P.3d 1107, 1111 (Alaska 2002)) ("A trial court's determination of custody will be set aside only if the entire record demonstrates that the controlling findings of fact are clearly erroneous or that the trial court abused its discretion.").

**12.** *McLane v. Paul,* 189 P.3d 1039, 1042 (Alaska 2008) (citing *Barrett v. Alguire,* 35 P.3d 1, 5 (Alaska 2001)).

**13.** *Id.* (citing *Jaymot,* 216 P.3d at 538–39).

**14.** *Id.* (citing *Dingeman v. Dingeman,* 865 P.2d 94, 96 (Alaska 1993)).

**15.** *Millette,* 177 P.3d at 261 (quoting *Ebertz v. Ebertz,* 113 P.3d 643, 646 (Alaska 2005)) (internal quotation marks omitted).

## IV. DISCUSSION

■ Under AS 25.20.110(a), "[a]n award of custody of a child or visitation with the child may be modified if the court determines that a change in circumstances requires the modification of the award and the modification is in the best interests of the child." Modification of a custody determination is a two-step process: first, "the parent seeking modification must establish a significant change in circumstances affecting the children's best interests"; only then is a best interests analysis performed.[16]

In *Hunter I* we remanded this case and specified several allegations that, if established at the evidentiary hearing on remand, could warrant modification of custody: (1) verbal abuse, (2) the boys being left in Walker's care,[17] (3) signs that "the boys have exhibited significant anger and behavioral issues after returning from Conwell's home," (4) that "Conwell's employment required that he 'live away from the children for several weeks at a time,'" and (5) interference with telephonic visitation.[18] The superior court found that there had not been a substantial change of circumstances with respect to any of these allegations, and therefore denied Hunter's request for custody modification. Our review of the record leads us to conclude that this decision was not an abuse of discretion, and we affirm.

### A. The Superior Court Did Not Abuse Its Discretion In Concluding That There Had Not Been A Substantial Change Of Circumstances With Reference To Abuse, Behavioral Problems, And Travel By Conwell.

#### 1. Alleged verbal abuse by Walker

■ Hunter testified that in 2006 she "overheard [Walker] . . . in the background, and she was . . . yelling at [the boys], and . . . I didn't know who she was at the time so I called the troopers on a welfare check." Kotzebue police followed up by telephone and no other evidence of abuse was recorded. When the superior court asked if Hunter had any other evidence of verbal abuse by Walker, Hunter replied "I don't know if the verbal abuse is still going on." [19] Hunter's witness offered no evidence of abuse by Conwell or Walker. Conwell testified that if Walker yelled at the boys, it was only to get their attention and was not an aggressive yell. Conwell also testified that there was "no confrontation" between Walker and the boys at all, and denied having stated that he noticed that Walker "mistreated" the boys. Conwell stated that "there has never been an incident towards [the children] ever, the allegations on [Walker] yelling or verbally or physically abusing is completely false . . . there's nothing to show. . . . I've never, ever, ever had a problem with [Walker] and the boys."

Having heard this testimony, the superior court concluded that there had not been a change of circumstances with respect to the issue of abuse, stating that "[t]he verbal abuse allegation I believe is not substantiated for anything that's going on these days." [20] This finding is amply supported by the record.

#### 2. The boys' alleged behavioral problems

■ Hunter testified that the boys exhibit "difficult behaviors" when they visit Hunter, "[i]n the first few days, like the transition time," although she acknowledged that the boys might be acting out as a result of the transition between households. Conwell testified that when the boys return to his custo-

---

16. *Hunter v. Conwell*, 219 P.3d 191, 196 (Alaska 2009) (*Hunter I*) (citing *Ebertz*, 113 P.3d at 647).

17. This issue was related to the allegation that Walker verbally abused the boys. *See Hunter I*, 219 P.3d at 196–97. On remand, the superior court appeared to merge issues (1) and (2).

18. *Id.*

19. With regard to the related issue of the boys being left in Walker's care, the superior court asked Hunter whether she had any specific information concerning who provides care for the

boys when Conwell is away; Hunter replied that she "was never told actually who watches them when he is out of town, I just asked that, why can't it be me?" Hunter also conceded that she willingly let the boys go with Conwell's family members on various occasions.

20. The superior court also found that "the children are being cared for adequately and properly whether Mr. Conwell is there or whether his girlfriend is there."

dy the only behavior he sees is "over excitement," and suggested that "[m]aybe [Hunter is] not used to their personalities, they're aggressive young boys, they like to wrestle, they're hands-on boys. Maybe she's not used to that." He also testified that the boys are among the top in their classes at school.

Having heard this testimony, the superior court was "not convinced that there are significant anger management and behavioral issues, other than perhaps during a transitional period." This finding is supported by the record.

### 3. Conwell's work and travel schedule

Conwell testified that he had been employed by OTZ Telephone for "three to four" years, and that although the "vast majority of [his] work is taken care of in Kotzebue," every "once in a great while" he is "called out for a day trip" which tends to be within 90 miles of Kotzebue. Conwell testified that since this job started he has been out of town for no more than three days at a time; his employer knows he has children, and he has kept records of his occasional day trips to the villages. Conwell also testified that his normal work schedule is 8 to 5 Monday through Friday, and that he is on call at other times but has not been called once since he started work; he is usually home for dinner with the boys, who have a "very structured time schedule." Hunter submitted no evidence or testimony challenging any of Conwell's testimony on this issue. Furthermore, the superior court asked Hunter whether she had "any idea about" Conwell's "work schedule or where he is," and she replied "I actually do not."

Having heard this testimony, the superior court stated that "Mr. Conwell's testimony is pretty clear that he does not travel out of town for significant periods of time." This finding is supported by the record.

### B. The Superior Court Did Not Abuse Its Discretion In Concluding That There Had Not Been A Substantial Change Of Circumstances With Reference To Telephonic Visitation.

In our 2009 opinion remanding this case to the superior court for an evidentiary hearing,

we stated with regard to the issue of telephonic visitation:

> In her motion for reconsideration, Hunter alleged that Conwell continued to interfere with her telephonic visitation even after the court ordered a specific schedule for the calls. This allegation was not part of the record at the time the court denied the motion to modify custody, but because this case is remanded for a hearing, we note that Conwell did not refute this allegation. He essentially responded by explaining that he considered it more important to allow the boys to play outside than making them available for Hunter's telephone calls, and he implied that he would not return Hunter's calls unless she provided him with a calling card. The court's order did not require that Hunter provide a calling card. *Where geographic separation makes frequent in-person visitation impossible, telephonic visitation is crucial.* On remand, both parties will have an opportunity to address whether Hunter has had continued difficulty contacting the boys by telephone and if so, whether any interference by Conwell constitutes a substantial change of circumstances.[21]

On appeal following remand, Hunter argues that "the most important issue ... is the continued interference by Mr. Conwell in regard to contact with her children," highlighting her "ongoing" problems contacting the boys during her visitation periods between 7:30 and 8:00 p.m. on Tuesdays, Thursdays, and Sundays. In essence, Hunter argues that the superior court abused its discretion in finding that the lapses in telephone visitation did not constitute a substantial change in circumstances. Conwell, in turn, argues that the superior court did not abuse its discretion in so finding.

Telephonic visitation between these parties has proved problematic for some time. In her reply brief, Hunter points to two September 2008 affidavits detailing her difficulties communicating with the boys, a circumstance she described as "the rule, rather than [the] exception." For instance, she noted that between early August and mid-September 2008 she "was able to make contact and

---

**21.** *Hunter I,* 219 P.3d at 197–98 (footnote omitted, emphasis added).

speak with [S.C.] once and [A.C.] twice, on all other occasions the telephone was not answered, nor was any attempt made to return my calls." The record also contains a third 2008 affidavit by Hunter in which she stated that Conwell claimed that he "does not have to allow the children to speak with her" and that "he has all the power," and that he had "acted upon his threats" by changing his telephone number, failing to answer the telephone, and failing to return her telephone messages.

The superior court heard detailed testimony from Hunter recounting dates and times when she was unable to reach the boys in early 2010. Hunter also testified that when she does reach the boys they often are distracted by television or video games.

Conwell concedes that Hunter missed seven scheduled telephone calls during the months of January and February 2010, as well as having no contact at all for several weeks in March 2010 when Conwell took the boys to Hawaii and did not provide Hunter with contact information or otherwise contact Hunter. But Conwell points out that many of these missed calls occurred outside court-ordered times, and that Hunter testified that occasionally she was able to speak with the children outside of her court-ordered times.

It is clear that telephonic communication between Hunter and the boys continues to be problematic, and, as the superior court observed: if "over the course of the next year . . . the situation [does] not improve[ ]," then "[t]hat issue alone . . . will constitute a substantial change of circumstances."

The superior court found, however, that the problems with telephonic communication did not rise to the level of a substantial change of circumstances. While the issue is a close one, the court's decision is neither clearly erroneous nor an abuse of discretion. In *Kelly v. Joseph,* for example, we upheld the superior court's finding of changed circumstances after the court found the telephone communication to be "woefully inadequate" and an "affirmative [demonstration]" of "unwillingness to . . . allow [the children] to share." [22]

We reiterate, though, that this is a serious issue. As the superior court explained:

Ms. Hunter has a legitimate concern about contact with the boys. And I am of the opinion that if there is a scheduled time, and it is, there is, in the . . . custody order as I recall, it seems to me that maybe *the television needs to get turned off, and when mother calls, then you deal with it, and I don't care if that's inconvenient or if it upsets one of the kids or not. This is a significant issue, you [Conwell] have the kids more than nine months of the year, mother's entitled to talk to them when it's time to talk to them.* Now clearly if she doesn't call at the appointed times, then that's her problem. But if she does, *she's entitled to have the kids talk to her.* (Emphasis added.)

The superior court's decision was based almost entirely on the oral testimony of Hunter, Conwell, and Hunter's witness, so its weighing of this testimony must be given deference. [23] When reviewing whether the superior court is justified in finding a change of circumstances, we do not parse each alleged factual assertion of change, but instead look to see whether the circumstances in the aggregate establish a change of circumstances. [24] On the record as a whole, we hold that the superior court did not abuse its discretion in finding no change of circumstances sufficient to modify custody. [25] We

**22.** 46 P.3d 1014, 1017–18 (Alaska 2002) ("Actions by a custodial parent which substantially interfere with the noncustodial parent's visitation rights are sufficient to constitute a change in circumstances. These actions include a detrimental and well established pattern of behavior on the part of the custodial parent to erode the bonds of love and affection between the other parent and the children.") (Internal cites and quotations omitted).

**23.** *See Millette v. Millette,* 177 P.3d 258, 261 (Alaska 2008) (quoting *Ebertz v. Ebertz,* 113 P.3d 643, 646 (Alaska 2005)).

**24.** *See Nichols v. Mandelin,* 790 P.2d 1367, 1372 (Alaska 1990) (concluding that "in the aggregate, [several indicia of a mother's 'overall maturation'] constitute a substantial change in circumstances").

**25.** Because the superior court concluded that no substantial change in circumstances had occurred in this case, no best interests analysis was necessary. *See Hunter I,* 219 P.3d at 196 (citing *Ebertz,* 113 P.3d at 647) (describing the two-step process for custody modification).

cannot, however, overemphasize what we said in *Hunter I:* "Where geographic separation makes frequent in-person visitation impossible, telephonic visitation is crucial." [26] If Hunter feels that the telephonic visitation is not occurring as ordered by the court, she may ask the superior court to revisit the issue.

## V. CONCLUSION

We AFFIRM the superior court's order denying Hunter's motion to modify custody.

CHRISTEN, Justice, not participating.

---

26. *Id.* at 198 (citing *Silvan v. Alcina,* 105 P.3d 117, 121 (Alaska 2005)).