NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite a memorandum decision in a brief or at oral argument should review Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

|  |  |  |
|---|---|---|
| WALTER J. KURKA, | ) | Supreme Court Nos. S-14462/14512 |
|  | ) |  |
| Appellant, | ) | Superior Court No. 3HO-03-00165 CI |
|  | ) |  |
| v. | ) | MEMORANDUM OPINION |
|  | ) | AND JUDGMENT* |
| AMY L. KURKA, | ) |  |
|  | ) | No. 1444 – November 28, 2012 |
| Appellee. | ) |  |
|  | ) |  |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Homer, Anna M. Moran, Judge.

Appearances: Walter J. Kurka, pro se, Homer, Appellant. Amy Kurka, pro se, Palmer, Appellee.

Before: Carpeneti, Chief Justice, Fabe, Winfree, and Stowers, Justices.

1.      Walter Kurka appeals the superior court's denial of three motions that he filed in 2011: (1) a motion seeking overnight visitation with his son, Christian; (2) a motion to hold Amy Kurka, the custodial parent, in contempt for interfering with his scheduled telephonic visitation with Christian; and (3) a motion seeking custody of Christian. Before addressing the merits of Walter's arguments, an overview of the long

---

\*      Entered under Appellate Rule 214.

history of custody and visitation disputes in this case is necessary to provide context to the superior court's rulings.

2.    Walter and Amy Kurka married in 1987.[1]  They lived near Homer during the marriage and had two children:  Andrew, born in 1992, and Christian, born in 1999.  The couple separated in 2003 and Walter filed for divorce.  Amy and the children moved to the Matanuska-Susitna Valley.  In 2005, Superior Court Judge Harold Brown issued a final divorce decree, awarding custody of the children to Amy and visitation rights to Walter.

3.    Following the superior court's final custody award, Walter attempted to visit only with Christian.[2]  Amy refused to allow Walter to visit with only Christian, interpreting the court's visitation order as precluding Walter from ignoring Andrew and visiting with Christian alone.  Walter filed several motions to hold Amy in contempt for interfering with his visitation rights.  Amy requested a hearing to clarify the visitation order.  The superior court denied Walter's contempt motions and apparently planned to schedule a hearing to clarify the terms of the visitation order.  Upon learning that the court had denied his contempt motions, Walter filed a notice to the superior court declaring that "[s]ince this court has no honor, and will not uphold the law," he would

---

[1]    This is the second time these parties have appeared before us.  The facts discussed above are summarized from our previous unpublished opinion, *Kurka v. Kurka*, Mem. Op. & J. No. 1278, 2007 WL 1723468 (Alaska, June 13, 2007).

[2]    During the divorce proceedings, Walter filed a motion to disestablish paternity of Andrew and asked the superior court to order genetic testing to confirm that he was not Andrew's biological father.  The court ordered genetic testing, which was completed shortly after Walter filed his first appeal to this court.  Based on the test results, the superior court granted Walter's motion to disestablish paternity in January 2006.  The order was retroactively effective as of May 18, 2005, the date of Walter's original motion.  Walter's present custody and visitation motions therefore concern only Christian.

"no longer attempt any visitation that he was given under the divorce decree."[3] In light of this notice, the superior court ruled that Amy's motion to hold a hearing on visitation was moot.

4. Walter appealed the superior court's custody order, which we affirmed. Walter also challenged the superior court's denial of his contempt motions. We held that the superior court did not err by denying Walter's motions to hold Amy in contempt, because the visitation order "appeared to contemplate simultaneous visitation with both children" and "made no provision for the possibility that Walter might refuse to accept visitation with Andrew."[4] We further held that "[a]lthough the situation certainly would have warranted a hearing in order to clarify the terms of the visitation order, Walter's abrupt 'notice' of his intent to abandon all further visitation bars him from claiming that the superior court erred in failing to clarify the meaning of its order."[5]

5. Following his appeal of the 2005 custody order, Walter filed several motions to modify custody of Christian, all of which were denied for various reasons.[6] In February 2009, Walter filed another motion to modify custody. The superior court

---

[3] *Kurka*, 2007 WL 1723468, at \*5.

[4] *Id*.

[5] *Id*.

[6] In November 2006, Walter filed a motion to modify custody, which the superior court denied because Walter had not alleged sufficient facts to demonstrate a substantial change in circumstances. In January 2008, Walter filed another motion to modify custody, and the superior court ruled that Walter needed to correct several technical defects in his motion before it could be taken under consideration. In September 2008, Walter filed another motion to modify custody, which Superior Court Judge Anna Moran denied, observing that Superior Court Judge Brown had previously denied all of the claims raised in Walter's motion and we had affirmed Judge Brown's rulings.

held a hearing on his motion in June 2009. At the hearing, Walter testified that he had not received any visitation and had not seen Christian in several years. Amy testified that Walter had not contacted her for visitation since his previous notice to the court stating his intent to abandon visitation. Walter admitted that he had not attempted to arrange visitation for several years, but argued that he had not attempted to exercise his visitation rights because he was waiting for a court to order Amy to comply with the visitation order.

6. The superior court stated that it understood there had been some confusion over the visitation order and that Walter might have felt there was nothing he could do while his case was on appeal, but the court could not conclude that Amy had interfered with visitation when Walter had not attempted to exercise his visitation rights. The court also stated that the situation could be fixed and discussed modifying the visitation order to establish scheduled telephonic visitation and gradually re-establish overnight visitation with Christian. Walter became upset and threatened to leave the courtroom. The court warned that his motion would be deemed withdrawn if he left, and Walter chose to remain. The parties then discussed establishing scheduled times for telephonic visitation and supervised face-to-face visitation. During this discussion, the court specifically stated that overnight visitation at that time would not be in Christian's best interest because he had not seen his father in several years.

7. On June 30, 2009, the superior court issued an order denying Walter's motion to modify custody and modifying the visitation terms. Under the modified visitation order, Walter was entitled to scheduled telephone visitation on Wednesdays at 9:00 p.m. and Sundays at 8:00 p.m. and was allowed open telephone visitation any time Christian was available. Because Walter had not had face-to-face visitation with Christian in over four years, the court informed him that if he wished to exercise his visitation rights he would have to "make arrangements to have a visit of

shortened duration, monitored by family or a close family friend, to help Christian with the transition."

8. In August and September 2009, Walter filed two motions alleging that he had twice arranged for Christian to visit him in Homer for a week under the supervision of family friends and Amy had failed to permit this visitation in violation of the court's June 2009 visitation order. In October 2009, the superior court held a hearing on Walter's motions and on a motion to modify visitation from Amy. At the hearing, Amy testified in support of her motion and requested that the court limit visitation to telephone calls until Walter had received counseling or a psychological evaluation. Walter testified in support of his motions and argued that the court's previous order allowed short face-to-face visitations. The superior court stated that, as they had discussed at the previous hearing, short visitation did not mean overnight visitation. The court stated that it should have made the restriction clear in its order, but the court's intent was clear from its previous oral rulings on the record. Walter became upset and threatened to leave the courtroom. He accused Judge Moran and Judge Brown of being incompetent and prejudiced against him. Judge Moran warned Walter that his motions would be deemed abandoned if he left the courtroom. Walter left and did not return.

9. On October 2, 2009, the superior court issued an order denying Walter's motions, granting Amy's motion, and modifying the visitation terms. Walter was still entitled to scheduled telephonic visitation on Wednesdays and Sundays, but if he missed more than three consecutive visitations, Amy was allowed to terminate the visitation schedule and Walter was required to file a motion with the superior court to reinstate scheduled visitation. Because the court was "alarmed by Walter's numerous angry outbursts at various court proceedings," which the court found was "consistent with what Amy has described as 'bullying' behavior toward his children," the court stated that it believed Walter "may have some psychological issues that impair his ability

to effectively parent Christian" and ruled that face-to-face visitation would not be allowed until Walter had "submitted to a psychological exam by a licensed person who has reviewed the court's order in this case." The order also allowed Christian to call his father any time he wished and granted Amy "the discretion to allow personal visits between Walter and Christian in a supervised setting if she feels such visits are in Christian's best interests." Walter did not challenge or appeal this visitation order.

10. In July and August 2011, Walter filed the motions at issue in this appeal. One was a motion requesting visitation with Christian from September 8–15 and seeking to enforce the terms of the original 2005 visitation order. Walter also filed a motion to hold Amy in contempt for violating his telephonic visitation rights, arguing that since June 23, 2010, he had only been able to talk with his son "a couple of times." Finally, Walter filed another motion to modify custody, alleging that Amy had been interfering with his relationship with Christian. In response to Walter's motion for visitation, Amy asserted that Walter was not entitled to such visitation because he had not yet complied with the court's October 2009 order. In response to Walter's contempt motion, Amy stated: "The plaintiff missed three weeks of calls, but having said that, I still leave it up to Christian, to answer his calls or not." In a reply brief, Walter alleged that since June 23, 2010, he had called regularly and received no answer on a majority of those occasions.

11. In September 2011, the superior court summarily denied Walter's visitation and contempt motions.[7] In October 2011, the superior court denied Walter's motion to modify custody, ruling that Walter had presented no new facts to support his claim of interference with the parental relationship, other than alleging that his son had

---

[7] We note that explaining the reasons for denying a motion is often as important as explaining the reasons for granting a motion, particularly when addressing motions from a pro se litigant.

refused to talk to him and hung up the phone during a recent telephonic visitation, and that this did not amount to a substantial change in circumstances.

12. Walter appeals the superior court's 2011 orders, proceeding pro se. We hold pro se litigants to a less stringent standard than lawyers and read their pleadings and briefing generously.[8] Walter essentially argues that the superior court's consistent denial of his custody and visitation motions demonstrates that the court is prejudiced against him and has resulted in a violation of his constitutional rights as a parent. He also argues that Amy has repeatedly frustrated his visitation rights and interfered with his relationship with Christian and that all of these circumstances amount to a substantial change in circumstances warranting a change of custody for Christian.

13. A child custody or visitation order "may be modified if the court determines that a change in circumstances requires the modification of the award and the modification is in the best interests of the child."[9] The change in circumstances must be significant or substantial,[10] and "[t]he parent moving for modification has the burden of proving a substantial change in circumstances as a threshold matter."[11] We have recognized that "child custody determinations are among the most difficult in the law and . . . trial courts are vested with broad discretion in dealing with this responsibility."[12] Accordingly, we will reverse the superior court's resolution of custody issues only when

---

[8]    *Bauer v. State, Dep't of Corrections*, 193 P.3d 1180, 1184 (Alaska 2008) (citing *Breck v. Ulmer*, 745 P.2d 66, 75 (Alaska 1987)); *Hymes v. Deramus*, 119 P.3d 963, 965 (Alaska 2005).

[9]    AS 25.20.110(a).

[10]    *Jenkins v. Handel*, 10 P.3d 586, 589 (Alaska 2000).

[11]    *Morino v. Swayman*, 970 P.2d 426, 428 (Alaska 1999).

[12]    *Gratrix v. Gratrix*, 652 P.2d 76, 79 (Alaska 1982).

that court has "abused its discretion or when its controlling findings of fact are clearly erroneous."[13] If the superior court denies a motion to modify custody or visitation without a hearing, we will review the denial de novo and "affirm if, in our independent judgment, the facts alleged, even if proved, cannot warrant modification, or if the allegations are so general or conclusory, and so convincingly refuted by competent evidence, as to create no genuine issue of material fact requiring a hearing."[14]

14. "The right to the care and custody of one's own child is a fundamental right recognized by both the federal and state constitutions."[15] This right is not absolute, however. It may be reduced by the terms of a divorce decree when parents invoke the court's jurisdiction to settle custody disputes.[16] Here, Walter's interest in the care and custody of his son was substantially reduced by the terms of the 2005 divorce decree — he no longer has custody and has only visitation rights.[17] We

---

[13] *McLane v. Paul*, 189 P.3d 1039, 1042 (Alaska 2008).

[14] *Morino*, 970 P.2d at 428 (quoting *C.R.B. v. C.C.*, 959 P.2d 375, 378 (Alaska 1998), *overruled on other grounds by Evans v. McTaggart*, 88 P.3d 1078, 1085 (Alaska 2004)).

[15] *J.M.R. v. S.T.R.*, 15 P.3d 253, 257 (Alaska 2001).

[16] *See Sacharow v. Sacharow*, 826 A.2d 710, 721 (N.J. 2003) ("[W]hen, as here, both parents have a fundamental right to the care and nurturing of their children and neither has a preeminent right over the other . . . . [i]t is not a third party or the State that seeks to intrude into the protected sphere of family autonomy. Rather, by submitting their dispute to the court, it is the parties themselves who essentially seek the impairment of each other's rights . . . .").

[17] *See, e.g.*, *Brittain v. Hansen*, 451 F.3d 982, 989-90 (9th Cir. 2006) (quoting *Zakrzewski v. Fox*, 87 F.3d 1011, 1014 (8th Cir. 1996)) ("[The father's] liberty interest in the care, custody, and management of his son has been substantially reduced by the terms of the divorce decree.").

affirmed the original custody order in Walter's previous appeal.[18]  Walter argues that the superior court's repeated denial of his motions to modify custody demonstrates the court is prejudiced against him.  But "judicial bias should not be inferred merely from adverse rulings."[19]  And nothing in the record here indicates the superior court abused its discretion or was motivated by prejudice.

15.  As shown by the facts discussed above, the superior court denied Walter's custody and visitation motions because Walter did not attempt to exercise visitation, abandoned his motions, or attempted to raise issues that had been settled by previous court orders.  The court restricted Walter's face-to-face visitation right as a temporary measure, out of consideration for Christian's best interests, with the ultimate goal of re-establishing a relationship between Christian and Walter.  In each instance the superior court articulated reasonable grounds for its rulings, and those grounds are supported by the record.  Walter has not demonstrated that his constitutional rights were

---

[18]  *Kurka v. Kurka*, Mem. Op. & J. No. 1278, 2007 WL 1723468, at *5 (Alaska, June 13, 2007).  Walter attempts to challenge the validity of that order by arguing that AS 25.24.150, the statute permitting the superior court to enter custody and visitation orders, is unconstitutional because it infringes on his constitutional right to the care and custody of his son.  This argument is without merit.  It is well-established that courts have the authority to make custody determinations in divorce proceedings.  *See, e.g.*, *In re Estate of S.T.T.*, 144 P.3d 1083, 1088 (Utah 2006) ("The U.S. Supreme Court has long upheld the state's use of its parens patriae authority to protect children in many arenas; . . . . [t]he state's power to protect the best interests of minor children also extends to divorce proceedings and custody determinations."); *see also Flores v. Flores*, 598 P.2d 893, 895-96 (Alaska 1979) ("[T]here is a strong state interest in divorce-child custody proceedings . . . .  Any provision for child custody in a divorce order is fully enforceable by the state."); *In re Marriage of Howard*, 661 N.W.2d 183, 190 (Iowa 2003) ("Divorce, by necessity, permits the state to intervene to resolve immediate and direct disputes that arise between parents over custody and visitation.").

[19]  *Tillmon v. Tillmon*, 189 P.3d 1022, 1027 n.13 (Alaska 2008).

violated by the initial loss of custody, the superior court's denial of his subsequent motions to modify custody, or the court's restrictions on his visitation rights.

16. Because Walter appeals directly from the superior court's denial of the three motions that he filed in July and August 2011, we analyze those motions in more detail. Walter's first motion requested overnight visitation with Christian from September 8-15. Under the terms of the October 2009 visitation order, which Walter did not appeal and which is currently valid and enforceable, Walter was not entitled to face-to-face or overnight visitation until he obtained a psychological examination and filed a motion with the superior court to reinstate such visitation. The record does not show that Walter took those steps before filing his request for overnight visitation.[20] The superior court did not err by denying Walter's motion for overnight visitation.

17. Walter's second motion sought to hold Amy in contempt for violating his telephonic visitation rights. "[W]ilful interference with visitation rights of the noncustodial parent may be a basis for contempt."[21] "[A] superior court's decision not to hold a party in contempt is committed to the court's discretion and is one to which we will accord considerable deference."[22] Based on the allegations in Walter's pleadings, we cannot conclude that the superior court abused its discretion by denying his contempt motion. As the party seeking to hold Amy in contempt, Walter carried the

---

[20] Walter challenges this requirement, arguing that he has already been evaluated by a licensed therapist. But the evaluation he refers to is a letter from a therapist that was submitted to the superior court in 2003. The letter does not address whether face-to-face visitation with Walter would currently be in Christian's best interest and does not comply with the requirement that Walter obtain a "psychological exam by a licensed person who has reviewed the court's [October 2009] order in this case."

[21] *Hermosillo v. Hermosillo*, 797 P.2d 1206, 1208 n.4 (Alaska 1990).

[22] *Stuart v. Whaler's Cove, Inc.*, 144 P.3d 467, 469 (Alaska 2006).

burden of proof.[23] Walter alleged that he had only been able to talk to his son "a couple of times" since June 23, 2010. Amy alleged that Walter had missed three weeks of calls. Under the October 2009 visitation order, Amy was not required to adhere to the telephonic visitation schedule if Walter missed more than three consecutive calls. Walter claimed Amy violated the court order by denying him his telephonic visitations with Christian; Amy responded that Walter missed more than three consecutive telephonic visitations so the court order no longer applied. It was within the superior court's considerable discretion to find Amy credible on this point and thus to decline to hold Amy in contempt.

18. Finally, Walter filed a third motion seeking to modify custody, alleging that Amy was interfering with his parental relationship with Christian. The superior court denied his motion without a hearing. When the superior court denies a motion to modify custody without a hearing, we review the denial de novo and will affirm if the allegations do not raise a genuine issue of material fact or if the facts alleged, even if true, would not warrant modification.[24] A custodial parent's actions that "substantially interfere with the noncustodial parent's visitation rights" may be sufficient to constitute a change in circumstances justifying modification, if such modification is in the best interest of the child.[25] Actions that amount to substantial interference include

---

[23]     *See Johanson v. State*, 491 P.2d 759, 766 (Alaska 1971) ("[T]he burden of proving noncompliance, by a preponderance of the evidence, with the court's order should be on the plaintiff, who initiates the [contempt] action.").

[24]     *Morino v. Swayman*, 970 P.2d 426, 428 (Alaska 1999) (quoting *C.R.B. v. C.C.*, 959 P.2d 375, 378 (Alaska 1998), *overruled on other grounds by Evans v. McTaggart*, 88 P.3d 1078, 1085 (Alaska 2004)).

[25]     *Kelly v. Joseph*, 46 P.3d 1014, 1017 (Alaska 2002) (quoting *Hermosillo*, 797 P.2d at 1208) (internal quotation marks omitted).

"a detrimental and well established pattern of behavior on the part of the custodial parent to erode the bonds of love and affection between the other parent and the children."[26] Occasional missed telephone visits do not amount to substantial interference.[27] Furthermore, "a superior court may not modify custody solely because the custodial parent does not comply with orders of the court [such as visitation orders]; it must still conduct a best interests analysis."[28]

19.     Here, Walter alleged that he had recently tried to call Christian and Christian hung up the phone.  This single incident is insufficient to warrant a change of custody.[29]  Walter also alleged that he had attempted to exercise telephonic visitation under the October 2009 order, but his calls went unanswered and Amy did not schedule make-up calls as required by the court's order.  Even assuming that Walter's allegations of interference are true, they do not warrant a change of custody because it appears that a custody modification would not be in Christian's best interests.[30]  At the time of his motion, Walter had not seen his son in over seven years.  He had demonstrated an unwillingness to cooperate with the superior court's orders by refusing to take the

---

[26]     *Id*. (quoting *Pinneo v. Pinneo*, 835 P.2d 1233, 1238 (Alaska 1992)) (internal quotation marks and alterations omitted).

[27]     *See Harrington v. Jordan*, 984 P.2d 1, 4 (Alaska 1999) (allegation of only one incident of interference with telephonic visitation was insufficient to warrant custody modification).

[28]     *Kelly*, 46 P.3d at 1018 (citing *Platz v. Aramburo*, 17 P.3d 65, 71 (Alaska 2001)).

[29]     *See Harrington*, 984 P.2d at 4 (allegation of only one incident of interference with telephonic visitation was insufficient to warrant custody modification).

[30]     *See Kelly*, 46 P.3d at 1018 ("[A] superior court may not modify custody solely because the custodial parent does not comply with orders of the court; it must still conduct a best interests analysis.").

necessary steps to renew face-to-face visitation with his son. More importantly, the record indicates that Christian had been doing well at his current school and is very close to his older brother, Andrew. In 2009, in support of her motion to modify visitation, Amy submitted a letter from Christian's teacher stating that he had made "dramatic progress" academically and had "many friends" at school. Amy also submitted an evaluation from a psychologist who concluded:

> Christian and his brother, Andrew, appear to be well bonded to each other and will likely benefit from ongoing mutual support. They would likely decrease their level of current functioning if they were separated. Andrew appears to provide significant emotional support for Christian at this time [in 2009], and if at all possible their relationship should be protected.

We have stated that we are "generally reluctant to separate siblings in custody battles."[31] Finally, Walter had not complied with the superior court's order for a psychological evaluation, a necessary predicate to Walter being permitted face-to-face visitation, and, *a fortiori*, a necessary predicate before custody could be changed. Based on this record, Walter would not be entitled to a change of custody even if his allegations that Amy had interfered with his telephonic visitation are true. We therefore hold that the superior court did not err by denying Walter's motion to modify custody.

20. However, even though the allegations of interference in Walter's superior court pleadings were insufficient to warrant reversal of the superior court's denial of his contempt and custody motions, Walter has clearly alleged in his reply brief before this court that he attempted to engage in telephonic visitation from October 2009 to October 2010, but the majority of his calls went unanswered and were never returned. We have previously recognized the importance of telephonic visitation, observing that

---

[31]   *Id*. (citing *McQuade v. McQuade*, 901 P.2d 421, 425 (Alaska 1995)).

"[w]here geographic separation makes frequent in-person visitation impossible, telephonic visitation is crucial."[32] If Walter wishes to bring this issue before the superior court, he is free to file a motion to enforce the trial court's telephonic visitation order and to explain to the trial court why he believes that Amy has interfered with his visitation rights under the October 2009 visitation order.[33] The superior court should be given an opportunity to address and resolve this factual issue and, if necessary, determine the appropriate method for enforcing the visitation terms.

21.    We AFFIRM the superior court's rulings denying Walter's visitation motion, contempt motion, and custody motion.

---

[32]    *Hunter v. Conwell*, 276 P.3d 413, 420 (Alaska 2012) (quoting *Hunter v. Conwell*, 219 P.3d 191, 197, 198 (Alaska 2009)).

[33]    Walter has sometimes filed motions seeking to enforce the terms of the 2005 visitation order, as he did in his recent motion requesting overnight visitation. We note that the 2005 order is no longer valid and enforceable, as it has since been replaced by the superior court's June 2006 and October 2009 visitation orders. Walter must seek to enforce visitation in accordance with the visitation order currently in force — the October 2009 order.