James L. KELLY, Appellant,

v.

Katherine JOSEPH, f/k/a Katherine Kelly, Appellee.

No. S–10116.

Supreme Court of Alaska.

May 10, 2002.

---

Fleur L. Roberts, Law Office of Fleur L. Roberts, Fairbanks, for Appellant.

Christopher E. Zimmerman, McConahy, Zimmerman & Wallace, Fairbanks, for Appellee.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

*OPINION*

EASTAUGH, Justice.

## I. INTRODUCTION

This appeal arises out of a dispute between James Kelly and Katherine Joseph (f/k/a Katherine Kelly) over the custody of their

three children. The superior court awarded James primary physical custody of the three children after the divorce. Katherine later alleged that James breached the visitation provisions of the custody agreement and requested a modification of the agreement so that she could obtain physical custody of the two youngest children; the oldest child was to remain with James. The superior court ruled for Katherine after finding that James's breaches of the custody agreement resulted in a change of circumstances. We affirm the order modifying custody but remand for recalculation of child support.

## II. FACTS AND PROCEEDINGS

James and Katherine Kelly (n/k/a Katherine Joseph) were married in July 1989. They had three children: Shane, born in 1986; James, Jr. (Junior), born in 1988; and Peter, born in 1991.[1] James and Katherine separated in August 1998 and were divorced in October 1999. The couple lived in Fort Yukon while they were married. When they separated, Katherine moved to Fairbanks.

James and Katherine entered into a child custody agreement in October 1999. It provided that James was to have primary physical custody of the three children, who were to continue living in Fort Yukon during the school year. Katherine was to have set visitation privileges, including six weeks with the children during the summer, alternating holidays, and "free, open, liberal, unrestricted [telephone] access." The children were to be able to visit Katherine any time she was in Fort Yukon—her job requires that she travel there frequently—and they were to be able to visit Katherine any time James took the children to Fairbanks.

The problems leading to the present dispute began almost immediately after the divorce was final. Katherine claims that when she called, James frequently hung up on her or instructed the children not to answer the telephone. James testified that he does not recall hanging up on Katherine, although he does not fully dispute her claim. The superior court found that James did not fulfill his

responsibility under the custody agreement because, in part, "the level of telephone communication from Fort Yukon to Fairbanks [was] woefully inadequate."

Katherine alleged other violations of her visitation rights. The parties dispute the circumstances surrounding nearly all of these breaches, but the superior court determined that the weight of the evidence supported Katherine's allegations. The first significant incident occurred in December 1999. Per the custody agreement, Katherine was to have visitation with the children for Christmas. Katherine sent a fax to James stating that she had reserved seats for the children to fly to visit her in Fairbanks from December 22 until December 26. James disputed that the tickets were actually purchased and stated that he could not afford to purchase the tickets himself. The superior court determined that, regardless of the financial situation, James "wrongfully" denied Katherine visitation at Christmas 1999.

Shortly after a July 4, 2000 incident involving the police, Katherine moved to modify the child custody and visitation provisions of the parties' agreement.

Another incident occurred in December 2000, while Katherine's motion to modify custody was pending. Katherine planned to have the boys fly to Fairbanks for Christmas. She faxed a message to James on December 6 proposing visitation dates of December 22 through December 26. James did not send the boys to Fairbanks until December 24 because he claimed there was a party that the boys wanted to attend in Fort Yukon. The superior court determined that the custody agreement did not mean "that dad decides that a party on December 23rd is a justification to deny visitation."

The superior court orally entered its findings of fact and conclusions of law in January 2001. Several months later the court modified the original custody agreement and awarded primary physical custody of Junior and Peter to Katherine; James retained pri-

---

1. Katherine also has an older daughter, Amy. Amy was fifteen at the time of the custody investigator's report. James is not Amy's father, and Amy lives with her paternal grandmother in Chulkytak.

mary physical custody of Shane. The court also modified the child support payments.

James appeals the custody modification and child support award.

## III. DISCUSSION

### A. Standard of Review

■ The superior court has broad discretion in determining child custody.[2] The superior court's custody determination will not be set aside unless the record shows that its controlling findings of fact are clearly erroneous or the court abused its discretion.[3] A finding of fact is clearly erroneous only when a review of the record leaves the court with a definite and firm conviction that the superior court has made a mistake.[4] An abuse of discretion has occurred if the superior court considered improper factors in making its custody determination, failed to consider statutorily mandated factors, or assigned disproportionate weight to particular factors while ignoring others.[5]

■ "This court will generally not disturb a trial court's decision on a motion for child support unless the trial court abused its discretion. We will set aside a lower court's factual findings only when they are clearly erroneous."[6] Whether the trial court used the correct method of calculating child support is a matter of law that we review de novo.[7]

### B. The Superior Court Did Not Err in Modifying the Custody Agreement Giving Katherine Primary Custody of Junior and Peter.

■ James argues that the superior court erred in modifying the custody agreement solely because he had not been cooperative in carrying out the visitation obligations. He argues that the modification was a sanction against him for his behavior. The superior court "may not modify an existing custody arrangement unless it determines that a change in circumstances requires the modification of the award and the modification is in the best interests of the child."[8]

### 1. James's alleged breaches of the visitation provisions of the custody agreement satisfied the "changed circumstances" requirement.

■ James argues that because the "children were happy, healthy, well-cared for and doing better in school" and because the alleged communication problems with Katherine occurred "in late 1999 immediately following the parties' divorce," Katherine did not demonstrate that a substantial change in circumstances had taken place. Alaska Statute 25.20.110(a) does not specify what must be shown to demonstrate a change in circumstances. We have previously held that "[a]ctions by a custodial parent which substantially interfere with the noncustodial parent's visitation rights '[are] sufficient to constitute a change [in circumstances].'"[9] These actions include "a detrimental and well established pattern of behavior on the part of [the custodial parent] to 'erode the bonds of love and affection between the [other parent] and the children.'"[10]

The custody agreement specified Katherine's visitation rights, including telephonic communication and holiday visits. The superior court found that James did not take necessary steps to ensure that Katherine's rights under the agreement were satisfied. After examining telephone records, the superior court found that "the level of telephone communication from Fort Yukon to Fair-

**2.** *Siekawitch v. Siekawitch,* 956 P.2d 447, 449 (Alaska 1998) (quoting *Borchgrevink v. Borchgrevink,* 941 P.2d 132, 134 (Alaska 1997)).

**3.** *Id.*

**4.** *Id.*

**5.** *Id.*

**6.** *Murphy v. Newlynn,* 34 P.3d 331, 333 (Alaska 2001) (citations omitted).

**7.** *Id.*

**8.** *Pinneo v. Pinneo,* 835 P.2d 1233, 1238 (Alaska 1992) (quoting AS 25.20.110) (internal quotations omitted).

**9.** *Hermosillo v. Hermosillo,* 797 P.2d 1206, 1209 (Alaska 1990) (citations omitted).

**10.** *Pinneo,* 835 P.2d at 1238.

banks is woefully inadequate and affirmative[ly demonstrates] Mr. Kelly's unwillingness to heal these children or allow them to share." The superior court also found that James did not honor the spirit of the visitation agreement when "Christmas vacation was denied in [1999], and without just [cause was] shortened in 2000." Our review of the record convinces us that the superior court did not abuse its discretion in determining that James breached the visitation provisions of the custody agreement, thus satisfying the "changed circumstances" requirement for modifying child custody.

### 2. The superior court did not err in determining that the change in circumstances requires modification of child custody in the best interests of the children.

▇▇▇▇▇ Alaska Statute 25.24.150(c) requires that courts determine custody in accordance with the children's best interests, after considering specified factors.[11] James argues that the superior court did not engage in a valid best interests analysis as AS 25.24.150(c) requires because the court mainly based modification on a single factor: James's alleged breaches of the visitation provisions of the custody agreement. He argues that "[t]he Trial Court ... gave far too much weight to what was found to be [James's] non-cooperation with the parties' agreement and court order on custody." We agree that a superior court may not modify

custody solely because the custodial parent does not comply with orders of the court; it must still conduct a best interests analysis.[12] We will find that the trial court abused its discretion if it considered improper factors, failed to consider statutorily mandated factors, or improperly weighed certain factors in making its determination.[13]

Although the superior court focused on James's breach of the custody agreement in determining that modification was in the best interests of the children, it also engaged in a broader best interests analysis. The superior court considered how the relocation might affect the children and their educational opportunities. It also found that both parents were capable of raising the children, although it expressed concern that the children were not receiving the professional care needed to "help [them] heal from the emotional wounds they've suffered." We are generally reluctant to separate siblings in custody battles, even where it mollifies tensions such as those between Shane and Katherine.[14] But the superior court carefully considered the children's best interests in constructing the modification order and gave Shane an option to choose at any time to be with his brothers. The superior court's findings were supported by the record and adequately address the required factors set out in AS 25.24.150(c).

The record does not support James's claim that the superior court abused its discretion

---

11. AS 25.24.150(c) requires that the court consider:

(1) the physical, emotional, mental, religious, and social needs of the child;
(2) the capability and desire of each parent to meet these needs;
(3) the child's preference if the child is of sufficient age and capacity to form a preference;
(4) the love and affection existing between the child and each parent;
(5) the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity;
(6) the desire and ability of each parent to allow an open and loving frequent relationship between the child and the other parent;
(7) any evidence of domestic violence, child abuse, or child neglect in the proposed custodial household or a history of violence between the parents;

(8) evidence that substance abuse by either parent or other members of the household directly affects the emotional or physical well-being of the child;
(9) other factors that the court considers pertinent.

12. *Platz v. Aramburo*, 17 P.3d 65, 71 (Alaska 2001); *see also Hakas v. Bergenthal*, 843 P.2d 642, 644 (Alaska 1992) ("[Best interests] inquiry is not obviated by [a party's] noncooperation.").

13. *Gratrix v. Gratrix*, 652 P.2d 76, 80 (Alaska 1982); *Deivert v. Oseira*, 628 P.2d 575, 577 (Alaska 1981).

14. *McQuade v. McQuade*, 901 P.2d 421, 425 (Alaska 1995). *But see Valentino v. Cote*, 3 P.3d 337 (Alaska 2000) (holding superior court's determination that fourteen-year-old was sufficiently mature to express choice to separate from sibling was not abuse of discretion).

in modifying custody. The superior court found distressing James's refusal to actively engage the children in communication with Katherine, and the record supports its finding that James's efforts to give the children contact with Katherine were "woefully inadequate." The superior court found particularly egregious James's repeated interference with holiday visits. These instances were not isolated, but formed a pattern of interference. Indeed, James's interference with visitation for Christmas 2000 occurred after Katherine had already moved to modify custody. But the superior court did not limit its focus to James's interference with visitation rights. Instead, it considered the impact of the modification on the children and determined that the evidence supporting modification outweighed evidence of potential disruptions in the children's lives. We will not reweigh the evidence when the record provides clear support for the trial court's ruling.[15]

Because the superior court assessed the children's best interests in relation to the relevant statutory factors of AS 25.24.150(c), we hold that it did not err in modifying custody.

## C. James's Child Support Obligation Must Be Recalculated.

James argues that the superior court erred in calculating child support. The superior court calculated child support by applying Alaska Civil Rule 90.3(b),[16] arriving at a total annual award to Katherine of $5,266.98 ($438.92 per month).[17] James argues that the court's determination of how much time each parent would have physical custody of the children does not accurately reflect the actual time anticipated by the parties. He expects to have physical custody of Shane

---

**15.** *D.M. v. State, Div. of Family & Youth Servs.,* 995 P.2d 205, 214 (Alaska 2000).

**16.** When the superior court issued its child support order on March 7, 2001, Civil Rule 90.3 permitted, but did not require, use of the method set out in Rule 90.3(b) to calculate divided custody awards. *See Rowen v. Rowen,* 963 P.2d 249, 254 (Alaska 1998). Subsection (3) of Rule 90.3(b) states, in part:

> The parent with the larger [annual amount owed for child support] is the obligor parent and the annual award is equal to the difference between [the obligor's calculated payment and the other parent's calculated payment] multiplied by 1.5. However, if this figure is higher than the amount of support which would be calculated under paragraph (a) assuming primary custody, ... the annual support is the amount calculated under paragraph (a).

Rule 90.3, following amendment effective April 15, 2001, now requires that Rule 90.3(a) be used to determine divided custody awards. Alaska R. Civ. P. 90.3(b)(6) (2001–2002). Rule 90.3(b)(6) states in part: *"Divided Custody.* A child support award in a case in which the parents have divided custody is calculated, first, by determining what each parent would owe the other for children in that parent's primary physical custody *under 90.3(a)* and offsetting those amounts."* (Emphasis added.) *See also* Alaska R. Civ. P. 90.3, cmt. V.D (2001–2002) (same); *cf: Bunn v. House,* 934 P.2d 753, 755–58 (Alaska 1997) (applying similar method to that of Rule 90.3(a) for divided custody case).

**17.** The superior court arrived at this amount as follows:

$26,056.90 (James's adjusted annual income)

| | | |
|---|---|---|
| × | .33 | (Rule 90.3(a) multiplier for three children) |
| $ 8,598.78 | | (Amount James would owe under Rule 90.3(a) if Katherine had custody of all three children 100% of the time) |
| × | .67 | (Percentage of time Katherine will have physical custody as determined by the superior court) |
| $ 5,732.81 | | (James's obligation) |
| $20,197.40 | | (Katherine's adjusted annual income) |
| × | .33 | (Rule 90.3(a) multiplier for three children) |
| $ 6,665.14 | | (Amount Katherine would owe under Rule 90.3(a) if James had custody of all three children 100% of the time) |
| × | .33 | (Percentage of time James will have physical custody as determined by the superior court) |
| $ 2,221.49 | | (Katherine's obligation) |

The superior court then offset these calculations to determine the total child support owed and the monthly support payment:

| | | |
|---|---|---|
| | $ 5,732.81 | (James's obligation) |
| − | $ 2,221.49 | (Katherine's obligation) |
| | $ 3,511.32 | (Difference in obligations) |
| × | 1.5 | (Rule 90.3(b) multiplier) |
| | $ 5,266.98 | (Annual amount James is to pay Katherine) |
| ÷ | 12 | (Months) |
| | $ 438.92 | (James's monthly support payment) |

ninety-five percent of the time and physical custody of the two other children for at least twenty-five percent of the time. James's calculation implies that he will have physical custody of each child for an average of approximately forty-eight percent of the time. This figure varies from the superior court's calculated custody figure of 33.33% for James.

■ The superior court's calculated figure for James's custody may be·incorrect because its March 2001 order appears to suggest a greater average percentage for James's physical custody than the 33.33% the court used in calculating child support.[18] We cannot assess the extent of this possible miscalculation because we cannot determine how many days each parent is to have visitation under the superior court's custody order. It does seem clear that Katherine has primary physical custody of Junior and Peter and that James has primary physical custody of Shane. We hold that it was error to calculate the divided custody award under Rule 90.3(b) without first accurately accounting for each parent's period of physical custody.

James may also be entitled to move for recalculation of the child custody award for changed circumstances under Rule 90.3(h)(1), which provides:

A final child support award may be modified upon a showing of a material change of circumstances.... A material change of circumstances will be presumed if support as calculated under this rule is more than 15 percent greater or less than the outstanding support order.

We have held that "certain changes in the law can constitute material changes of circumstances permitting the modification of child support orders [including] the adoption of·Civil Rule 90.3, itself." [19] The rule change which makes Rule 90.3(a), rather than Rule 90.3(b), the default method for calculating divided custody awards is such a material change.[20] Applying Rule 90.3(a) rather than Rule 90.3(b) would decrease the divided custody support award by about forty-three percent.[21]

## IV. CONCLUSION

For these reasons, we AFFIRM the order modifying child custody and REMAND for recalculation of James's child support obligation.

**18.** Because Shane will continue to reside almost entirely with James and because the two younger children may potentially spend much of their summer vacation with James, the 33.33% figure used by the court may significantly deviate from the percentage of time James will have the children.

**19.** *Bunn,* 934 P.2d at 758 (citing *Charlesworth v. State, Child Support Enforcement Div. ex rel. Charlesworth,*·779 P.2d 792, 793–94 (Alaska 1989)).

**20.** Because Rule 90.3 was amended after the superior court calculated child support, we briefly consider whether the change in the method of calculation may alter James's support obligation by more than fifteen percent. Assuming for sake of discussion no change in the underlying facts concerning custody, it appears the fifteen percent· threshold will be met. Under Rule 90.3(a), applying the custody figures the superior court relied on, James's obligation will be $249.66:

| | |
|---|---|
| $26,056.90 | (James's adjusted annual income) |
| × .27 | (Rule 90.3(a) multiplier, used |

| | |
|---|---|
| | because Katherine has primary physical custody of two children) |
| $ 7,035.36 | (Total yearly child support James owes Katherine) |
| $20,197.40 | (Katherine's adjusted annual income) |
| × .20 | (Rule 90.3(a) multiplier, used because James has primary·physical custody of one child) |
| $ 4,039.48 | (Total yearly child support Katherine owes James) |
| $ 7,035.36 | (James's obligation) |
| − $ 4,039.48 | (Katherine's obligation) |
| $ 2,995.88 | (Net Amount James owes Katherine per year) |
| ÷ 12 | (Months) |
| $ 249.66 | (James's monthly support payment) |

**21.** Compare monthly support payment calculations accompanying notes 17 & 20.