CARNEY, Justice, dissenting.
I agree that Regina received adequate notice that custody would be addressed at the show cause hearing, that the superior court was not required to continue that hearing, and that the superior court appropriately changed custody of the children from Regina to Michael. But because I believe that as a matter of law she could not have committed custodial interference, I respectfully dissent.
In its June 2016 order the superior court awarded "sole legal custody" and "primary physical custody" of the children to Regina and "visitation" to Michael. As this court notes, the superior court made its award with great reluctance, and it warned Regina that "[i]f [she] fail[ed] to cooperate ... to ensure that the children have ... visitation ... [it would] likely change its custody determination to award sole legal and primary physical custody ... to [Michael]."
In their litigation regarding Regina's failure to honor the requirement for visitation with Michael, both parents and the superior court consistently and clearly differentiated between Regina's custody of the children and Michael's visitation. Michael asked the court to hold Regina in contempt for failing to return the children to Alaska for visitation and reminded the court that it had "stated it would entertain a change of custody" to him if Regina failed to make the visitation happen. In response Regina accused Michael of trying to make the court reverse its award of custody to her. In its order scheduling a hearing on Michael's motion to show cause, the court warned Regina to be prepared to explain why the court "should not change custody of the minor children" from her to Michael.
Alaska's custodial interference statute states that a "relative" of a child commits the crime of custodial interference if, "knowing that [she] has no legal right to do so, [she] takes, entices, or keeps th[e] child ... from a lawful custodian with intent to hold the child ... for a protracted period."[1] The record is clear that Regina knew that the children were supposed to be in Alaska for the court-ordered visitation with Michael. It is also clear that she intended to, and did, keep the children for a protracted period in Arizona. And further that she did not have a legal right to do so under the court's custody order. But, as she argues, she was the children's "lawful custodian." As a result she could not have committed custodial interference.
In deciding that "Michael was a lawful custodian of the children"[2] and affirming the superior court on that basis, this court ignores the difference between the custody awarded to Regina and the visitation awarded to Michael. It also disregards the law. Alaska Statute 11.51.125 establishes the offense of failure to permit visitation with a minor. Its terms describe Regina's actions: A custodian commits this offense "if the custodian intentionally, and without just excuse, fails to permit visitation with a child ... in the custodian's custody [as required by] a court order that is specific as to when the custodian must permit another to have visitation *209 with that child."[3]
The court emphasizes differences between the two statutes' mens rea and durational requirements.[4] While those differences may suggest that someone other than a custodian, or any person when no custody order exists, could deprive another of visitation and not be charged with failure to permit visitation, those situations are not present here. Regina was the custodian and she did violate the custody order and fail to permit Michael's court-ordered visitation with the children.
The court seems to assume that there is some undefined amount of time that transforms "visitation" into "custody." The custody statute distinguishes between an award of shared custody to both parents and an award of custody to one parent while providing only visitation to the other "if that is in the best interests of the child."[5] Yet the court considers Michael's visitation "during the summer" sufficiently long to qualify as custody.[6] Based upon the visitation's length, it holds that although she might have been guilty of failure to permit visitation if she had intended to keep the children only for a short period, once the period became "protracted" Regina committed custodial interference.[7] In elevating Regina's conduct to custodial interference based on the length of time involved, the court appears to dismiss section (b) of the visitation offense, which provides that a "custodian may not be charged ... with more than one offense in respect to what is ... a single continuous period of visitation."[8]
The court justifies its transformation of one offense into another by turning to a statute that defines "lawful custodian" as anyone with legal authority for "the care, custody, or control of another" and then concluding that unsupervised visitation "during the summer" includes enough "care, custody, and control" to change court-ordered visitation into court-created custody.[9] This conclusion not only contradicts the legislature's separation of the two concepts and establishment of separate punishments,[10] it also dismisses our only previous discussion of a similar situation. In Graham R. v. Jane S. we disapproved of the superior court's finding that Graham had committed custodial interference by keeping the child in another state for months in violation of a court order providing Jane with regular visitation.[11] We stated:
The ... custody order granted sole legal custody and primary physical custody to Graham. Jane was not the custodial parent (although she had visitation rights), and the "custodial interference" statute, by its terms, does not apply.[12 ]
In that case we went on to affirm the court on a different basis - that the interference with visitation constituted a substantial change in circumstances that justified modifying custody.[13] The superior court's change of custody to Michael here is similarly justified. But the superior court's reliance upon its mistaken belief that Regina had committed custodial interference was not harmless.
Building upon its erroneous interpretation of the custodial interference statutes, the superior court concluded that Regina had a history of perpetrating domestic violence. As *210 a result, the court limited Regina to supervised visitation with the children, and it required her to "attend a 36-week domestic violence intervention program."[14] I would therefore reverse the superior court's findings that Regina had committed custodial interference, that she had done so twice, and that the statutory presumption against unsupervised visitation applied to her; I would remand the matter to the superior court to reconsider these, and any other rulings, that may have stemmed from its custodial interference determination.

AS 11.41.330(a)(1). Removing the child from the state or keeping the child outside the state elevates the offense to first-degree custodial interference, a felony. AS 11.41.320(a)(1). The superior court specifically found that Regina committed the felony because she kept the children outside Alaska.

Opinion at 15.

AS 11.51.125(a).

Opinion at 16-17.

AS 25.20.060(a), (c).

Opinion at 16.

AS 11.41.330(a)(1).

AS 11.51.125(b).

Given that both the statute relating to interference with custody and the statute addressing failure to permit visitation were drafted in 1978 and that courts' approaches to child custody considerations in Alaska and throughout the United States have changed in the intervening decades, it may well be appropriate for the legislature to revisit the statutes and the concepts underlying them. But until such time as they are amended, these laws continue to distinguish clearly between "custody" and "visitation."

Failure to permit visitation is a violation; custodial interference in this case is a felony. See AS 11.41.320(b) (custodial intervention), AS 11.51.125(e) (failure to permit visitation); note 1, above.

334 P.3d 688, 694 (Alaska 2014).

Id.

Id. at 695.

See AS 25.24.150(j) (allowing "only supervised visitation" if parent has history of perpetrating domestic violence, conditioned on parent completing parenting education program).